BY THE COURT.
On February 4,1920, the legislature passed an amending act (108 O. L., Part 2, 1301) to provide for an increase in salaries of judges of the courts of common pleas, and judges of other courts, which act took effect on May 24, 1920.
Under this amendment that part of the salaries of the judges of the court of common pleas of Cuyahoga county, payable out of the county treasury, was increased two thousand dollars. Those of said judges of Cuyahoga county, whose terms of office began before the taking effect of this amending act, claimed to be entitled to the increased salary provided for in said act, and made demand upon the county auditor for his warrant covering same, which he refused to issue.
*737 In June, 1920, these judges who are in this case as defendants, brought their action in mandamus against the county auditor to compel him to issue his warrant for the increase claimed to be due them. This case, of which more will be said hereafter, terminated in favor of the judges, and the writ was issued accordingly.
On April 19, 1921, the prosecuting attorney of Cuyahoga county, upon written demand of a taxpayer, George D. Hile, who is also an attorney at law residing and practicing in Cleveland, brought this action to enjoin the county auditor from making these payments to said judges. Answers were filed in the case by the judges and the county auditor, under which an issue was raised on the merits, and under the second defense the first suit above mentioned, was plead as res judicata, and judgment was rendered in favor of the judges. From that judgment of the common pleas court, appeal was taken and by agreement of all parties the case was assigned for trial before this court at Lima.
None of the judges of this court had any information or knowledge whatever concerning the nature of the case, and when counsel representing both sides appeared at Lima, the court was informed by the prosecuting attorney of Cuyahoga county, that he was convinced there was no merit in plaintiff’s present case, and he consented that a decree be entered in favor of the judges. This being agreed to by all, counsel personally present in the case (Mr. Hile being absent), and the court, having no information regarding any aspect of the case (not having seen the pleadings, nor heard a statement of the facts), instructed counsel to agree upon, prepare and file with the clerk such journal entry as would be appropriate.
Information of this step came to the taxpayer who had made demand for the institution of this suit, and he thereupon made application to this court to be made a party that he might prosecute the suit upon its merits, and by and with the consent of all the parties in the case he was made a party plaintiff with leave to file a reply to the answers filed herein by the defendants.
He' has since conducted the suit in plaintiffs behalf, with commendable skill, courage and fidelity.
*738 With, the other issues raised in his reply, he alleged that the former judgment plead by defendants judges, as res judicata. was a judgment procured by collusion and fraud.
The case was then assigned for trial and heard at Cleveland upon all the issues.
From the pleadings and the evidence the following questions are presented for determination.
■ First, whether Art. 4, See. 14, of the constitution of Ohio prevents judges who were elected or appointed prior to May 24, 1920, from receiving an increase of salary under this act.
Second, whether that point was determined in the mandamus case, and if it was, whether the parties to this case were parties to that case.
Third, whether the judgment in the mandamus case is void on the ground of fraud, and if it is, whether it can be set aside herein.
On the first question in controversy, we are convinced that there is no doubt of the application of the constitutional provision which reads as follows:
“The judges of the supreme court, and the court of common pleas, shall at stated times, receive for their services, such compensation as may be provided by law: which shall not be diminished, or increased, during their term of office; but they shall receive no fees or perquisites, nor hold any office of profit or trust, under the authority of this state, or of the United States. All votes for either of them, for any elective office, except a judicial office, under the authority of this state, given by the general assembly, or the people, shall be void.”
As was said by Donahue, J. in Cleveland Tel. Co. v. Cleveland, 98 Ohio St. 358, 368 [121 N. E. 701], the intent of a constitutional provision must be determined from the language of the same, and the words employed must be given their usual and ordinary meaning. If the words be attended by no ambiguity or doubt, and are plain and distinct, there is no occasion to resort to other means of interpretation. The question is not what is intended by the words, if the latter can be understood, but what is the meaning of the words employed.
The construction urged in behalf of the judges in the pres *739 ent case would limit the interdiction against the increase of salary, to that portion payable from a source other than the state treasury. This is the only reason urged against the application of the constitutional inhibition.
To give such a construction would result in injecting language into the provision, for which no reason whatever has been, or in our opinion none could be, put forth.
Implication of words into a constitutional provision, or statute, can be resorted to only in aid of a doubtful or ambiguous provision, but is never permitted where the language admits of no uncertainty.
To obviate the evil and mischief which might arise from the exercise of legislative power to increase or diminish the salary of any public officer during the term for which he was elected or appointed, the framers of the Constitution, in addition to express provisions such as the one we are discussing, prohibiting such power, incorporated Section 20 of Article I, as an obvious inhibition applicable to public officers generally.
And this latter section has been universally construed to apply, regardless of whether the officers were of the state, or the political subdivisions thereof.
Concerning the question of fact of adjudication in the mandamus ease, of whether the act in issue herein is unconstitutional so far as relates to an increase in the salaries, we find in favor of defendants judges. That is to say, the evidence shows that, .upon submission of the general demurrer the question was specifically decided by the court.
Although in the mandamus case all the judges united as relators, and the petition was verified by only one of them, and notwithstanding the relief sought was payment of but $37.63, the question of misjoinder which might have been raised, was waivable and waived.
We are also of opinion that there is the requisite identity of parties, essential to res fadieata. With the exception of one of the judges who died after the mandamus suit was commenced, the same judges were parties to that case who are parties to the record in the present case. The defendant county auditor was, *740 as already stated, party defendant in the mandamus case, and by his presence there, the public was a party by presentation.
That in the mandamus case the state on whose relation the judges brought the suit, had no direct interest in the controversy, is also true in the instant ease. The public, that is the people of Cuyahoga county, were present in the mandamus case, by the county auditor, and they are. present in this case by the same officer and also by the state of Ohio.
So that, we repeat, there was an adjudication of the issue of whether defendants judges are prevented by the constitutional inhibition, from receiving the increase in salary, which results from the act amending Sec. 2252 G. C.
Coming now to the issue of fraud in the procurement of the judgment in the mandamus case, it is the position of counsel for the judges that the attempt of plaintiff to be relieved from it herein, is a collateral attack.
If the attack be collateral, of course it must fail. But we hold that the attack is direct, and comes clearly within the doctrine established by our Supreme Court. Conway v. Duncan, 28 Ohio St. 102; Kingsborough v. Tausley, 56 Ohio St. 450 [47 N. E. 541], Pomeroy, Equity Jurisprudence (4 Ed.) Sec. 919.
Plaintiff Hile should be permitted to amend his reply, so as to incorporate therein that the judgment in the mandamus case be set aside and held for naught.
Passing to the evidence introduced on the issue of fraud in the procurement of the judgment, the following are among the important circumstances shown by the evidence.
Counsel representing the judges prepared the petition and then prepared a general demui’rer thereto, and a waiver of summons. By an understanding and agreement that he had made with the auditor and prosecuting attorney who was by law counsel for the auditor, he procured the proper signatures to this waiver and to the demurrer and filed the same, and made arrangements with the assignment clerk for an immediate or early assignment before a common pleas judge sent to the county by the chief justice. Under and by virtue of this agreement had with the prosecutor, a hearing was to be had upon, and some kind of a submission was made of, the demurrer, it being agreed that *741 the court should enter final judgment in the case without leave to either side to plead further, which was done by the court issuing the writ of mandamus. No appeal was taken in this case, and error was not prosecuted and thus the case came to an end.
The evidence shows that the judges who are defendants here, knew or had information through conferences, of these arrangements and of these proceedings as they progressed. One of the judges prepared a brief upon the merits which was submitted to the judge in that case by counsel for the judges. The evidence shows that the prosecuting attorney filed no brief or memorandum of authorities whatsoever in that hearing, although he had prepared a written opinion advising the county auditor against payment of the increase.
He gives evidence himself to the effect that he made all argument against the writ, being of the opinion, as he says, at that time that the judges were not entitled to the increased salary. He testifies that he had read with care, the brief of the judge submitted in their behalf, before the arguments upon the demurrer but was still of adverse opinion. He gives as his reason for not appealing or prosecuting error, that when the judge decided the case, the written opinion convinced him that his position was wrong and therefore he was content to abide by the judgment of the court of common pleas.
The testimony of the county auditor, who is also a lawyer, is to the effect that from the time the judges first claimed the right to the increased salaries, he was clearly of opinion that they were not entitled thereto, and that his opinion on that point has never undergone a change; that he did not perceive it his duty to make an effort to protect the county treasurer against the unlawful increased salary, further than as the same might be incidental to his personal protection from liability which might result from his issuing the warrants without sanction of a court.
After the mandamus case had been commenced, the county auditor had no communication whatever with the prosecuting attorney regarding the progress of the suit or any matter connected with it, nor did he have any communication with the prosecuting attorney after the suit was decided in favor of the judges, but promptly issued the warrants in issue in the man *742 damus suit, and all subsequent warrants covering the increased salaries, until the commencement of this action. And he pleads as a defense herein, the judgment in that case.
We have not attempted to set forth in detail all the testimony bearing on the conduct of the prosecuting attorney and the county auditor, in relation to the conduct of the judges and their attorneys, in the mandamus suit. But on the whole, that conduct compels the conclusion that the judgment was the result of fraud by the collusion at least of counsel for the judges, and the prosecuting attorney with the tacit acquiescence of the judges and the county auditor.
We can not be unmindful of the indifference (if that be the appropriate term) of the county auditor, to the interest of the public in the subject of the mandamus suit and its consequences, and to his entire neglect of the case both before and after its determination.
The opinion filed by the trial judge in the mandamus case, and the brief of the judges, to which we have referred, have also been considered by us as evidence, and from our consideration of them, we find there is no argument nor authority in the opinion of the trial judge additional to the matter set forth in said brief.
Being of such firm conviction that the constitutional inhibition. applies in this case, we are compelled to say that the argument presented in the brief referred to, was so clearly based upon a false premise, that there was no justification whatever for the prosecuting attorney (whose duty under Sec. 2921 G-. • C., is to protect the county treasury against the unlawful withdrawal of money therefrom), in being content with the judgment in that case, especially in the face of the fact that while the case involved only a small sum there, it in reality involved an ultimate withdrawal from the county treasury of more than $62,000 of public money.
If there is any class of people who are presumed to know and revere the law and understand the effect of circumstances and evidence, it surely must be judges and lawyers.
Defendants judges must therefore be deemed to have known that the prosecuting attorney, the auditor (a nominal party *743 only) and their own attorney, were not doing.their duty, and that they were in collusion in the perpetration of a fraud upon the county.
No one circumstance of itself proves the judgment fraudulent, but all the undisputed facts, and such of the testimony as we find to be true, leaves no doubt that the judgment is ineffectual as an estoppel against the public in the case at bar.
It is settled beyond contention that where an attorney fraudulently fails in the performance of his duty to his client, which results in the rendition of a judgment, the latter may set aside at the instance of the client. This principle should be, and we therefore hold that it is, applicable to the conduct of a public officer such as a county auditor in his representative capacity, when the fraudulent conduct of such officer contributes to the entering of a judgment against the public in whose place he stands. Even though the county auditor was free from collusion in the mandamus case, the judgment is still fraudulent.
A perpetual injunction must be allowed against all defendant judges excepting Maurice Bernon, who is entitled to the increase during his incumbency subsequent to the taking effect of the act. Newark v. Richter, 39 O. C. C. 219 [7 App. 328; 27 O. C. A. 385].
The taxpayer who is party plaintiff in this case, aside from meriting commendation for insisting on a decision upon the merits in a case against parties who are judges in a court in which he practices, should be compensated for his services in saving to the public the large sum of money in controversy. Hence this court makes an allowance of an attorney fee to him in the sum of $1,000 which shall be taxed as costs in this case, pursuant to the intent of Sec. 2923 G. C. The costs of the case, including said attorney fee, shall be paid by the county and judgment is rendered accordingly.